# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JO GIRON,<br><br>    Plaintiff,<br><br>    v.<br><br>MARTIN O'MALLEY,<br>Commissioner of Social Security,<br><br>    Defendant.<br>_____/ | Case No. 1:24-cv-00541-SKO<br><br>ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(Doc. 1) |

## I.   INTRODUCTION

Plaintiff Jo Giron ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for Supplemental Security Income (SSI) under the Social Security Act (the "Act"). (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

## II.   FACTUAL BACKGROUND

On February 6, 2022, Plaintiff protectively filed an application for SSI payments, alleging she became disabled on April 1, 2018, due fibromyalgia; pernicious anemia; depression; anxiety; hyperthyroidism; IBS [irritable bowel syndrome]; and food sensitivities. (Administrative Record ("AR") 17, 51, 52, 70, 71, 72, 233, 237, 273, 288.)

Plaintiff was born on January 8, 1987, and was 35 years old on the date the application was

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (*See* Doc. 17.)

filed. (AR 25, 51, 70.) She has a high school education. (AR 25, 238.) Plaintiff has no past relevant work. (AR 25, 37.)

**A.     Relevant Medical Evidence[2]**

In July 2018, X-rays of Plaintiff's chest and neck were normal, showing unremarkable soft tissue views of the neck and no presence of radiopaque foreign body. (AR 327–29, 343–44.) Plaintiff presented for follow up of pernicious anemia, iron deficiency, and history of cervical lymphadenopathy in May 2021. (AR 500–501.) On examination, Plaintiff had normal heart rate and rhythm, normal pulmonary effort, no neurological deficits, no abdominal tenderness or guarding, no adenopathy, no weakness, no edema, and normal gait. (AR 501.)

Plaintiff presented at a neurology clinic for evaluation of headache in June 2021. (AR 386–87.) The provider noted that Plaintiff's "cerebrospinal fluid was normal, glucose was normal, protein was normal, no evidence of Lyme's disease involving the central nervous system[,] MRI of the cervical spine completely normal even though she has a lot of neck pain [and] low back pain, [and her] neurological examination [was] normal." (AR 386.) On examination, Plaintiff was "well developed, well nourished, [and in] no acute distress." (AR 386.) She had regular heart rate and rhythm, with no murmur observed, and normal motor, sensory, cerebellar, and gait. (AR 386.) Plaintiff's mental status was normal. (AR 386.) She was noted to be "neurologically stable" on her current medications, which were continued. (AR 386–87.)

In July 2021, Plaintiff complained of experiencing upper body soreness and full body tenderness since 2016. (AR 557.) Her physical examination was normal, except for some abdominal tenderness to light palpation. (AR 558–59.) She was assessed with fibromyalgia and fatty liver and was advised to consult with hepatology. (AR 559.)

Plaintiff complained of back and leg pain with numbness and tingling in September 2021. (AR 544.) On examination, Plaintiff demonstrated full range of musculoskeletal motion and no edema. (AR 544.) She was assessed with neuropathic pain and directed to start Gabapentin. (AR 544.) In October 2021, a scan of Plaintiff's liver showed low stage/grade fibrosis and steatosis. (AR

---

[2] As Plaintiff's assertion of error is limited to the ALJ's consideration of Plaintiff's subjective complaints, only evidence relevant to this argument is set forth below.

577.)

Plaintiff presented for a follow up appointment at the neurology clinic in November 2021, where her physical examination results were normal as before. (AR 384–85.) She was also noted to be "neurologically stable" on her current medications, which were continued. (AR 384.) That same month, Plaintiff complained of ongoing muscle spasms and tremors with intermittent back pain. (AR 540.) Plaintiff's examination was normal, and she was observed to be well developed and well nourished. (AR 540.) Her fibromyalgia was observed to be "overall managed," and she was recommended to exercise by walking for 20 to 30 minutes for at least five days per week. (AR 561.)

Plaintiff also consulted with a hepatology clinic in November 2021, where an abdominal ultrasound revealed that she had fatty liver. (AR 571.) Her physical examination was normal. (AR 572.) The provider concluded that her mild steatosis was "not contributing to her current symptoms." (AR 572–73.) An upper GI endoscopy performed in December 2021 was largely normal, with a "few gastric polyps" noted. (AR 596.)

In January 2022, Plaintiff complained of abdominal pain. (AR 487.) On examination, Plaintiff had normal heart rate and rhythm, normal pulmonary effort, no neurological deficits, no abdominal tenderness, no cervical adenopathy, and no edema. (AR 487–88.) She received a vitamin B12 injection, and it was noted that her "recent labs appear stable overall." (AR 486.) She was prescribed medication for epigastric pain and recommended to go on a lactose free diet for one month. (AR 606.)

In February 2022, Plaintiff complained of "multiple symptomatology," including migraine, blurred vision, and nausea. (AR 389, 391.) Her physical examination was normal as before, and she was advised to continue Gabapentin. (AR 389, 391.)

A lumbar spine MRI performed in March 2022 showed "[m]ild L5-S1 disc space narrowing with slight dehydration" with "[n]o lumbar disc extrusion or protrusion, canal stenosis or foraminal narrowing." (AR 413–14.) That same month, Plaintiff complained of ongoing lower back pain, and numbness and tingling in her hands. (AR 474.) On examination, Plaintiff had normal heart rate and rhythm, normal pulmonary effort, no neurological deficits, and no edema. (AR 474–75.) She was

advised to continue oral vitamin B12 supplementation and discussed a trial of vitamin B12 injections. (AR 473.) She was also referred to physical therapy. (AR 532.)

Plaintiff also consulted with a rheumatologist in March 2022. (AR 617–18.) She complained of pain in her thoracic spine and arm stiffness that gets worse with activity. (AR 617.) On examination, Plaintiff had a normal spine presentation except for mild tenderness to palpation in the parathoracic region that is "fairly diffuse" and "not just isolated fibromyalgia tenderpoints," clear lungs, regular heart rate and rhythm, no gross sensory or deficits, and normal affect. (AR 618–19.)

In April 2022, Plaintiff presented for a physical examination. (AR 521–26.) She demonstrated full range of cervical, thoracic, and lumbar motion, no palpable adenopathy, clear lungs, regular heart rate and rhythm, normal bowel sounds, normal spine, no clubbing, cyanosis, or edema, normal motor strength, and normal mental status. (AR 524–25.)

Plaintiff presented for a rheumatology consult in July 2022, to get a second opinion of fibromyalgia. (AR 626.) She reported that if she exercises, she is "[d]own for the next three days." (AR 627.) On examination, she had clear chest sounds, regular cardiac rate and rhythm, normal abdomen, good range of motion, "multiple myofascial tender points," and her chest had "slight erythema" of the skin. (AR 628.) She reported that anti-inflammatory injections do "seem to help." (AR 627–28.)

In September 2022, an MRI of Plaintiff's cervical spine showed "[t]race degenerative changes of the visualized cervical spine," with no "significant evidence" of central canal or neuroforaminal stenosis, disc protrusion, or disc extrusion (AR 660–61.) A brain MRI performed that same month showed "[b]ilateral punctate foci of nonspecific white matter disease" that was "greater than expected for patients age." (AR 662.) The radiologist deemed these findings "nonspecific, with potential etiologies including vasculopathic, demyelinating, and post inflammatory causes." (AR 662.) That same month, Plaintiff presented to the rheumatology clinic complaining of left arm pain and numbness. (AR 650.) A physical examination was normal, except for "[m]ultiple myofascial tender points." (AR 651.)

A spinal fluid study performed in October 2022 revealed evidence of "rare degenerated cells," but was otherwise was normal, with no malignant cells identified. (AR 664, 671.)

4

In April 2023, Plaintiff complained of chronic pain syndrome and Lyme disease. (AR 790–91.) Her primary symptom complaints were fatigue, joint pain, nerve pain, and paresthesias. (AR 791.) On examination, Plaintiff was observed to be well developed and well nourished, with regular cardiac rhythm and rate, normal range of motion, normal strength, normal skin appearance, intact sensation, and "12/18 Fibromyalgia trigger points." (AR 790–91.) Plaintiff presented for a follow up appointment in May 2023. (AR 788–89.) She was noted to be on thyroid medication. (AR 788.)

**B.    Administrative Proceedings**

The Commissioner denied Plaintiff's application for benefits initially on August 23, 2022, and again on reconsideration on February 6, 2023. (AR 17, 95–100, 110–16.) Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 123–24, 128–41.) At the telephonic hearing on September 5, 2023, Plaintiff appeared with counsel and testified before an ALJ as to her alleged disabling conditions. (AR 34–47.) A Vocational Expert ("VE") also testified at the hearing. (AR 47–50.)

**1.    Plaintiff's Testimony**

Plaintiff testified that she cannot work due to complications from Lyme disease. (AR 38.) According to Plaintiff, her health began to decline in 2017, when she was originally diagnosed with fibromyalgia and thyroid problems. (AR 38.) Her symptoms are generalized body pain that affects her mobility, as well as joint pain, tingling, muscle weakness, and fatigue. (AR 43, 45–46.) She experiences a burning sensation in her legs, which becomes worse with prolonged standing. (AR 45.) According to Plaintiff, she experiences up to five "bad days" per week, during which she must "constantly medicate," rest, and do "very little" chores, with breaks. (AR 46–47.)

Plaintiff testified that at the time of the hearing she had stopped taking many of the medications prescribed by her treatment providers; instead, she takes over-the-counter medications and muscle relaxers for her pain. (AR 41–42.) She testified the medications were helpful, but "'I'm not 100 percent." (AR 42–43.)

**2.    Vocational Expert's Testimony**

The VE testified at the hearing that Plaintiff had no past work. (AR 37, 47.) The ALJ asked the VE to consider a person of Plaintiff's age, education, and past work history. (AR 47.) The VE

was also to assume this person is limited to light work; frequent climbing of ramps and stairs, frequent balancing; occasional climbing of ladders; occasional stooping, kneeling, crouching, and crawling; and avoidance of concentrated exposure to extreme cold, vibration, and work hazards. (AR 47.)  The VE testified that such a person could perform certain light, unskilled jobs in the national economy, such as general cashier, Dictionary of Operational Titles (DOT) code 211.462-010 with a specific vocational preparation (SVP)[3] of 2; fast food worker, DOT code 311.472-010 with an SVP of 2; and housekeeping cleaner, DOT code 323.687-014 with an SVP of 2. (AR 47–48.)  The VE further testified that, were the exertional level changed from light to sedentary, such a person from the first hypothetical could perform other jobs in the national economy, including telephone information clerk, Dictionary of Operational Titles (DOT) code 237.367-046 with a SVP of 2; charge account clerk, DOT code 205.367 014 with an SVP of 2; and ticket counter, DOT code 219.587 010 with an SVP of 2.  (AR 48–49.)

According to the VE, once-per-week unscheduled absences is not consistent with full-time work.  (AR 49.)  The VE further testified that off task behavior for an hour per day due to unscheduled breaks is also work preclusive. (AR 49.)

**C.     The ALJ's Decision**

In a decision dated September 18, 2023, the ALJ found that Plaintiff was not disabled, as defined by the Act. (AR 17–26.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 416.920. (AR 19–26.) The ALJ decided that Plaintiff had not engaged in substantial gainful activity since February 6, 2022, the application date (step one). (AR 19.)  At step two, the ALJ found Plaintiff's following impairments to be severe: history of anemia; history of Lyme disease; fibromyalgia. (AR 19–21.)  Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three).  (AR 21–22.)

---

[3] Specific vocational preparation, as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.  DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991).  Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest level – over 10 years of preparation). *Id*.

The ALJ assessed Plaintiff's residual functional capacity (RFC)[4] and applied the assessment at steps four and five. *See* 20 C.F.R. § 416.920(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that Plaintiff had the RFC:

> to perform light work as defined in 20 CFR [§] 416.967(b), with frequent climbing ramps and stairs, frequent balancing, and occasional climbing ladders, stooping, kneeling, crouching, and crawling. [Plaintiff] must avoid concentrated exposure to extreme cold, vibration and workplace hazards.

(AR 22–25.) Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" the ALJ rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR 22.)

The ALJ determined that Plaintiff had no past relevant work (step four) but that, given her RFC, she could perform a significant number of jobs in the national economy (step five), including general cashier, fast food worker, and housekeeping cleaner (AR 25–26.) The ALJ ultimately concluded Plaintiff was not disabled since February 6, 2022, the application date. (AR 26.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on March 18, 2024. (AR 1–6.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 416.1481.

### III.     LEGAL STANDARD

**A.     Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or

---

[4] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996). The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id*. "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 883 (9th Cir. 2006).

7

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that [they] are not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520); *see also* 20 C.F.R. § 416.920. The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see, e.g.*, 20 C.F.R. § 416.920(a)(4) (providing the "five-step sequential evaluation process" for SSI claimants). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520); 20 C.F.R. § 416.920.

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.     Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence . . . is 'more than a mere scintilla,'" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted)

## IV.     DISCUSSION

Plaintiff contends that the ALJ failed to articulate clear and convincing reasons for discounting Plaintiff's subjective complaints of pain, neurological deficits, and fatigue due to, among other things, her severe impairment of fibromyalgia. (Doc. 12 at 6–10; Doc. 15 at 2–5.) The Commissioner responds that the ALJ properly relied on evidence in the record that undermined the credibility of Plaintiff's allegations of disabling symptoms and limitations. (Doc. 14 at 3–6.) The Court agrees with Plaintiff and will remand for further proceedings.

**A.     Legal Standard**

In evaluating the credibility of a claimant's testimony regarding subjective complaints, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Id.* The claimant is not required to show that his impairment "could reasonably be expected to cause the severity of the symptom [they have] alleged; [they] need only show that it could reasonably have caused some degree of the symptom." *Id.* (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if they give "specific, clear and convincing reasons" for the rejection.[5] *Id.* As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226–27 (9th Cir. 2009). Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Light v. Social*

---

[5] The Court rejects the Commissioner's contention that a lesser legal standard applies. (*See* Doc. 14 at 2 n.1.)

*Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The clear and convincing standard is "not an easy requirement to meet," as it is "'the most demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Social Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). General findings are not enough to satisfy this standard; the ALJ "'must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

**B.     Analysis**

As noted above, in determining Plaintiff's RFC, the ALJ concluded that Plaintiff's medically determinable impairments reasonably could be expected to cause the alleged symptoms. (AR 22.) The ALJ, however, also found that Plaintiff's statements regarding the intensity, persistence and limiting effects of these symptoms were "not entirely consistent" with the medical record. (AR 22.) Since the ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," the only remaining issue is whether the ALJ provided "specific, clear and convincing reasons" for Plaintiff's adverse credibility finding. *See Vasquez*, 572 F.3d at 591.

Here, the ALJ found Plaintiff's symptom allegations were "not consistent with the evidence" and her "course of treatment" likewise did not support them. (AR 23, 24.) Plaintiff contends that the ALJ "failed to present a clear and convincing reason to dismiss [Plaintiff's] testimony regarding her functional limitations." (Doc. 15 at 2.) Plaintiff is correct; the ALJ materially erred in discounting her statements' credibility, and those errors were not harmless.

**1.     Objective Medical Evidence**

The ALJ discounted Plaintiff's allegations regarding the severity of her symptoms because the allegations are "not consistent with the evidence," including "imaging studies" and "clinical findings." (AR 23.) In reaching this conclusion, the ALJ failed to properly analyze Plaintiff's symptoms considering the realities of her fibromyalgia, which the ALJ found severe at step two. (AR 19.)

The Ninth Circuit addressed treatment of symptom testimony in fibromyalgia cases in *Revels*

*v. Berryhill*, 874 F.3d 648 (9th Cir. 2017).[6]  At the outset, the court noted that "[f]or a long time, fibromyalgia was 'poorly understood within much of the medical community.'" *Id*. at 656 (quoting *Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004)).  Fibromyalgia is unusual in that patients have normal strength, sensation, and reflexes; their joints appear normal; and "'[t]here is an absence of symptoms that a lay person may ordinarily associate with joint and muscle pain.'" *Revels*, 874 F.3d at 656 (quoting *Rollins v. Massanari*, 261 F.3d 853, 863 (9th Cir. 2001) (Ferguson, J., dissenting).

In *Revels*, the ALJ determined that the claimant's "testimony was undercut by the lack of 'objective findings' supporting her claims of severe pain." *Id.* at 666.  In doing so, the ALJ "highlighted several examinations that had mostly normal results, such as an X–ray and MRIs of [the claimant's] neck and back, as well as the nerve conduction and velocity study of her hands," and the ALJ "cited medical records showing that, at several doctor's appointments, [the claimant] exhibited normal muscle strength, tone, and stability, as well as a normal range of motion." *Id*. The Ninth Circuit held that the ALJ erred in discounting the claimant's testimony (as well as testimony provided by medical providers) because the ALJ failed to "consider" the claimant's "testimony in light of her fibromyalgia diagnosis." *Id*.  In support of this holding, the Ninth Circuit observed that the physical examination results cited by the ALJ were "perfectly consistent with debilitating fibromyalgia," that fibromyalgia "is diagnosed 'entirely on the basis of patients' reports of pain and other symptoms,' and 'there are no laboratory tests to confirm the diagnosis,'" and that "fibromyalgia is diagnosed, in part, by evidence showing that another condition does not account for a patient's [reported] symptoms." *Id*. (quoting *Benecke*, 379 F.3d at 590).  The court noted that, in addition to the lack of any objective, laboratory testing that might confirm the diagnosis, the symptoms of fibromyalgia are known to "wax and wane," with the result that patients have "bad days and good days." *Revels*, 874 F.3d at 657 (citing Soc. Sec. Ruling ("SSR") 12-2p; TITLES II & XVI: EVALUATION OF FIBROMYALGIA, SSR 12-2P, 2012 WL 3104869 (S.S.A. July 25, 2012)).[7]  *See also Tully v. Colvin*, 943 F. Supp. 2d 1157, 1165 (E.D. Wash. 2013) (noting that with fibromyalgia,

---

[6] Although *Revels* is controlling Ninth Circuit authority on the issue, neither party cites *Revels* in its briefing.

[7] SSR 12-2p is the Ruling specifically governing an ALJ's evaluation of fibromyalgia. *See id*. 2012 WL 3104689 (S.S.A. July 25, 2012).

the "symptoms can be worse at some times than others"). Thus, the ALJ must, necessarily, "consider a longitudinal record whenever possible," when determining the RFC of a patient with fibromyalgia. *Id*. The Ninth Circuit added that "[i]n evaluating whether a claimant's [RFC] renders them disabled because of fibromyalgia, the medical evidence must be construed in light of fibromyalgia's unique symptoms and diagnostic methods" and "[t]he failure to do so is error." *Id.* at 662.

Here, the ALJ's analysis of Plaintiff's testimony is problematic for the same reasons the Ninth Circuit noted in *Revels*. In discounting Plaintiff's testimony, the ALJ cited "a series of imaging studies" that were "normal" (AR 23 (citing AR 327–29, 343–44, 413–14, 577, 596, 660–62, 664–65, 671)) and "clinical findings" that showed "well developed and well-nourished appearance, normal appearance of the skin (i.e., no evidence of rash, lesions, synovitis, etc.), normal pulmonary effort, regular heart rate and rhythm, normal functioning of the cranial nerves, normal range of motion of the joints, normal motor, strength, sensation, and coordination at the extremities, [] normal gait," and "clear lungs." (AR 23–24 (citing AR 384, 386, 389, 391, 474–75, 487–88, 501, 524–25, 540, 544, 558–59, 572, 628, 651, 790–91).) These studies and examination results do not undermine Plaintiff's testimony about the extent of her joint pain, tingling, muscle weakness, and fatigue due to fibromyalgia (AR 43, 45–46), and there is no indication in the ALJ's decision that the ALJ considered fibromyalgia's unique symptoms and diagnostic methods in concluding certain disabling effects were undermined by the record.[8] *See Revels*, 874 F.3d at 656, 666–67. *See also Tina M. v. Comm'r of Soc. Sec.*, 418 F. Supp. 3d 614, 619 (W.D. Wash. 2019) ("[T]he fact that Plaintiff had normal muscle strength does not contradict Plaintiff's testimony that she suffers from

---

[8] In fact, the bulk of the medical evidence here supports and corroborates Plaintiff's testimony. Plaintiff presented medical records showing that over a period of years she experienced chronic pain that migrated and fluctuated, evidence that she suffered from tenderness at multiple points in her body, and evidence that she experienced fatigue and other symptoms typically related to fibromyalgia. *See Revels*, 874 F.3d at 656 (describing fibromyalgia symptoms). Multiple physicians have diagnosed Plaintiff with fibromyalgia (*see* AR 559, 561, 626), and the ALJ even acknowledged that Plaintiff's providers "observed tenderness throughout the spine" and "tenderness at twelve of eighteen fibromyalgia tender points" (AR 23). Notably, eleven or more tender points is "the cutoff for a diagnosis of fibromyalgia" under SSR 12-2p (which is not cited in the ALJ's decision), and "tender-point examinations themselves constitute 'objective medical evidence' of fibromyalgia." *Revels*, 874 F.3d at 663 (citing SSR 12-2P, 2012 WL 3104689, at *2–3 (S.S.A. July 25, 2012)); *see also Rollins*, 261 F.3d at 863 ("The most clear objective medical indication of fibromyalgia is tenderness at at least eleven of eighteen specific points on the body."). Instead of addressing this evidence within the framework of SSR 12-2p, the ALJ improperly relied on the absence of findings that courts have repeatedly recognized are not appropriate indicators of disability in the context of fibromyalgia to discount Plaintiff's testimony regarding her joint pain, tingling, muscle weakness, and fatigue.

fatigue and pain due to fibromyalgia."). *Accord Harris v. Kijakazi*, No. 21-35136, 2022 WL 1262011, at *1 (9th Cir. Apr. 28, 2022) (the ALJ "did not adequately account for [the petitioner's] fibromyalgia when he "relied on medical records showing unremarkable physical findings, including normal motor strength, range of motion, gait, and coordination" to reject symptom testimony); *Smith v. Saul*, 820 F. App'x 582, 584 (9th Cir. 2020) ("the fact that [the petitioner] retained 'full range of motion' and 'muscle tone' and showed little 'objective evidence' of dysfunction [was] not a valid reason for discounting . . . symptom testimony" about fibromyalgia).

The ALJ's decision also provides little to no guidance as to which disabling effects they believe to be undermined by which aspects of the record. To be clear and convincing, the ALJ must specify which of the claimant's complaints are contradicted by which clinical observations. *See Laborin v. Berryhill*, 867 F.3d 1151, 1155 (9th Cir. 2017) (where there is no evidence of malingering, "the ALJ must give 'specific, clear, and convincing reasons for rejecting' the testimony by identifying '*which* testimony [the ALJ] found not credible' and explaining '*which* evidence contradicted that testimony'") (quoting *Brown–Hunter v. Colvin*, 806 F.3d 487, 489, 494 (9th Cir. 2015)); *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1999) (holding that an ALJ's determination that a claimant was not credible because his "complaints are 'inconsistent with clinical observations' . . . . could satisfy the requirement of a clear and convincing reason for discrediting a claimant's testimony, except that the ALJ did not specify what complaints are contradicted by what clinical observations.") Here, the ALJ references the above-described "normal" medical records, but they do not specify how this evidence discredits Plaintiff's statements that she suffers from generalized body pain that affects her mobility; a burning sensation in her legs, which becomes worse with prolonged standing; and up to five "bad days" per week, during which she must "constantly medicate" and rest. (AR 43, 45–47.) In the absence of any linkage between the objective evidence of record and Plaintiff's statements, the Court is left to speculate as to which statements the ALJ intended to discount and how they are undermined by the evidence. This the Court cannot do. *See Brown–Hunter*, 806 F.3d at 494–95 ("We cannot review whether the ALJ provided specific, clear, and convincing reasons for rejecting [claimant]'s pain testimony where, as here, the ALJ never identified *which* testimony she found not credible, and never explained *which*

evidence contradicted that testimony . . . . In sum, we cannot substitute our conclusions for the ALJ's, or speculate as to the grounds for the ALJ's conclusions.").

In sum, the Court finds that the ALJ's determination that Plaintiff's testimony was "not entirely consistent with the medical evidence" (AR 22) was not a specific, clear, and convincing reason to reject her testimony as to the severity of her fibromyalgia-related symptoms. This error was not harmless because the only other reason the ALJ provided for rejecting Plaintiff's claim of being significantly limited by her symptoms—her course of treatment—also lacks the power to convince, as explained below.[9]

### 2.   Course of Treatment

In addition to relying on the objective medical evidence, the ALJ found that Plaintiff's "course of treatment," consisting of prescription medications, vitamin B12 injections, exercise, and physical activity, "also does not support [Plaintiff's] allegations." (AR 24 (citing AR 384, 386–87, 389, 391, 473, 486, 532, 544, 561, 606, 628, 791)).  It appears that the ALJ is suggesting that Plaintiff's treatment was conservative in nature, thus calling into question the severity of her symptoms.  As a general matter, "[c]onservative treatment is a legitimate reason for an ALJ to discredit a claimant's testimony regarding the severity of an impairment." *Trejo v. Berryhill*, No. EDCV 17-0879-JPR, 2018 WL 3602380, at *15 (C.D. Cal. July 25, 2018) (citing *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007)).  However, "[a] claimant 'cannot be discredited for failing to pursue non-conservative treatment options where none exist.'" *Id*. (quoting *Lapeirre-Gutt v. Astrue*, 382 F. App'x 662, 664 (9th Cir. 2010)).  Moreover, "[a]ny evaluation of the aggressiveness of a treatment regimen must take into account the condition being treated." *Revels*, 874 F.3d at 667.

As in *Revels*, here the ALJ provided no explanation why he believed Plaintiff's treatment

---

[9] The Commissioner asserts that Plaintiff's "reported activities [that] showed a level of functioning that contradicted her claimed limitations" is a permissible reason for the ALJ to discredit Plaintiff's subjective symptom testimony. (*See* Doc. 14 at 4–5.) But the ALJ did not give that reason (*see* AR 23–24), and the Court's review is limited to the rationale provided by the ALJ.  It cannot consider post-hoc rationalizations and inferences advanced by the Commissioner to justify the ALJ's rejection of Plaintiff's complaints.  *See Bray*, 554 F.3d at 1225 ("Long-standing principles of administrative law require [the court] to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking."); *Connett v. Barnhart,* 340 F.3d 871, 874 (9th Cir. 2003) (noting that a reviewing court "is constrained to review the reasons the ALJ asserts"); *Ceguerra v. Sec'y of Health & Human Servs*., 933 F.2d 735, 738 (9th Cir. 1991) ("A reviewing court can evaluate an agency's decision only on the grounds articulated by the agency.").

was conservative for her conditions, specifically fibromyalgia. 874 F.3d at 667. In fact, the Ninth Circuit has held that a course of treatment for fibromyalgia consisting of a variety of prescription medications and steroid injections, for example, is not conservative. *Id*. *See also Gilliland v. Saul*, 821 F. App'x 798, 799 (9th Cir. 2020) (finding treatment consisting of pain medications and injections was not "conservative"). District courts have also noted that " '[f]ibromyalgia is treated with medications and self-care,'" *Trejo*, 2018 WL 3602380, at *15 (quoting *McNeal v. Berryhill*, No. EDCV 17-0993 SS, 2018 WL 2078810, at *7 (C.D. Cal. May 2, 2018)), "rather than 'surgery or other more radical options.'" *Id*. (quoting *Sharpe v. Colvin*, No. CV 13-01557 SS, 2013 WL 6483069, at *8 (C.D. Cal. Dec. 10, 2013)). *See also Marshall v. Berryhill*, No. 16-CV-00666-BAS-PCL, 2017 WL 2060658, at *14 (S.D. Cal. May 12, 2017) ("[T]here is no cure for fibromyalgia—individuals suffering from the disease can only try and manage their symptoms.") (citing *Benecke*, 379 F.3d at 590).

Here, Plaintiff was prescribed and took a variety of pain medications, received a series of vitamin B12 injections and engaged in physical activity to the extent her pain allowed. (AR 389, 391, 486, 473, 544, 627.) There is no suggestion that Plaintiff's doctors proposed a more aggressive course of treatment (for her fibromyalgia or for her other conditions) that Plaintiff declined to pursue. Nor does the ALJ suggest that another course of treatment was available. Thus, under these circumstances, the ALJ could not rely on a conservative course of treatment to discredit Plaintiff's pain testimony. *Lapeirre–Gutt*, 382 F. App'x. at 664; *see also Cindy F. v. Berryhill*, 367 F. Supp. 3d 1195, 1210 (D. Or. 2019) ("Because the ALJ did not specify what more aggressive treatment options were appropriate or available, it would be illogical to discredit Plaintiff for failing to pursue non-conservative treatment options where none exist.") (internal quotations and citations omitted); *Moon v. Colvin*, 139 F. Supp. 3d 1211, 1220 (D. Or. 2015) ("[T]he fact that treatment may be routine or conservative is not a basis for finding subjective symptom testimony unreliable absent discussion of the additional, more aggressive treatment options the ALJ believes are available.") (citation omitted).

The ALJ also pointed to evidence that purportedly showed Plaintiff's symptoms had "some improvement" and were "managed" with medication. (AR 24 (citing AR 561, 627).) Evidence of

effective treatment may support an ALJ's rejection of symptom allegations. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits").

Here, however, the ALJ erred by isolating a few examples of symptom improvement and ignoring "the many others that indicated continued, severe impairment." *Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001). *See Attmore v. Colvin*, 827 F.3d 872, 877 (9th Cir. 2016) (The ALJ "cannot simply pick out a few isolated instances" of medical health that support his conclusion but must consider those instances in the broader context "with an understanding of the patient's overall well-being and the nature of [his] symptoms."). A single treatment note indicates Plaintiff's fibromyalgia was "overall managed," yet ALJ's reliance on this sole notation is unreasonable given that Plaintiff also reported at that same appointment that her fibromyalgia was "bad," causing fatigue, migraines, "brain fog," and pain in shoulders, neck, and trapezius muscles (AR 558). *See Benecke*, 379 F.3d at 590 (symptoms of fibromyalgia commonly include "chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue associated with this disease").

The ALJ's failure to consider the longitudinal record is particularly problematic given that, as noted above, "the symptoms of fibromyalgia 'wax and wane,'" such that those suffering from it commonly experience "bad days and good days." *Revels*, 874 F.3d at 657 (quoting SSR 12-2p, 2012 WL 3104869, at *6 (July 25, 2012)); *see also Tully*, 943 F. Supp. 2d at 1165. Other treatment records from the relevant period, which the ALJ cites, detail headaches, joint stiffness, body pain, tingling, muscle spasms, multiple tender points, fatigue, and nerve pain. (AR 386, 389, 391, 474, 540, 544, 557, 617, 628, 650, 651, 790, 791.) The ALJ also acknowledged Plaintiff's testimony that her medications "did not control her symptoms completely." (AR 24.)

Based on the foregoing, the Court finds that the ALJ's reliance on Plaintiff's course of treatment was also not a specific, clear, and convincing reason to reject her testimony as to the severity of her fibromyalgia-related symptoms.

**C.     The ALJ's Error Warrants Remand for Further Proceedings**

When an ALJ commits error that is not harmless, "[t]he decision whether to remand for further proceedings or simply to award benefits is within the discretion of [the] court." *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989) (citing *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987)). "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." *Benecke*, 379 F.3d at 593.  Furthermore, "[i]f additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded." *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981).  On the other hand, "where the record has been fully developed such that further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." *Benecke*, 379 F.3d at 593.  *See also Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2016).

Here, the ALJ committed legal error that was not harmless, but this is not a case where further administrative proceedings would lack purpose. The ALJ failed to sufficiently articulate her credibility analysis, particularly considering Plaintiff's fibromyalgia and binding Ninth Circuit authority. This failure can be remedied on remand.  *See Trejo*, 2018 WL 3602380, at *20 ("[F]urther administrative proceedings would serve the useful purpose of allowing the ALJ to evaluate the record in light of the unique characteristics of fibromyalgia, and to resolve some of the inconsistencies in the record, including Plaintiff's work history, daily activities, and CPAP noncompliance.") (citing *Revels*, 874 F.3d at 667 n.6; *Garrison*, 759 F.3d at 1021) (internal citations and quotations omitted).  *See also Voisard v. Berryhill*, No. 2:17-CV-1023-EFB, 2018 WL 4488474, at *5 (E.D. Cal. Sept. 19, 2018) ("That the ALJ failed to provide sufficient reasons for discounting plaintiff's subjective testimony in this instance does not compel a finding that he is unable do so.").

On remand, the ALJ should reevaluate Plaintiff's symptom testimony in accordance with SSR 12-2p, considering the full range of medical evidence, and further develop the record as necessary to address any changes to the RFC determination.  If the ALJ again discounts Plaintiff's subjective symptoms, they can then provide an adequate discussion of the evidence justifying her doing so.  *See Payan v. Colvin*, 672 F. App'x 732, 733 (9th Cir. 2016).  The ALJ must also reevaluate their conclusions at steps four and five of the disability determination in light of any changes to

Plaintiff's RFC.

## V.   CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is, therefore, VACATED and the case REMANDED to the ALJ for further proceedings consistent with this Order.  The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Jo Giron and against Defendant Martin O'Malley, Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **November 8, 2024**              /s/ *Sheila K. Oberto*
                                    UNITED STATES MAGISTRATE JUDGE